NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0158n.06

Case No. 22-5553

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 05, 2023
DEBORAH S. HUNT, Clerk

RACHEL CLARK,

Plaintiff - Appellant,

v.

WILLIAM JACKSON, in his individual capacity; JIM COLEMAN[1] in his official capacity as the CEO of Chattanooga-Hamilton Hospital, dba Erlanger Health System,

Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: MOORE, GIBBONS, and LARSEN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellant Rachel Clark, a registered nurse employed by Erlanger Health System, sued defendant-appellee William Jackson under 42 U.S.C. § 1983 for actions he undertook while Erlanger's CEO. Clark alleges that Jackson violated her Fourteenth Amendment rights when he instituted a policy requiring employees to receive a COVID-19 vaccine. The district court granted Jackson's motion to dismiss, finding that Clark failed to plausibly allege a claim. On appeal, Clark argues that the district court erred by considering materials outside the pleadings, permitting Jackson to argue an affirmative defense, and concluding that she had not pled a violation of her constitutional rights. Because the district court did not err in its consideration of Jackson's supporting materials or defenses, nor in its conclusion that Jackson failed to plausibly allege a claim, we affirm.

---

[1] Jim Coleman is the current CEO of Erlanger Health System and was automatically substituted as defendant for the official capacity claims. Fed. R. App. P. 43(c)(2).

I.

Erlanger Health System[2] ("Erlanger"), a Medicare and Medicaid-certified provider, receives federal funding from the Centers for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services. On November 5, 2021, CMS published a proposed interim final rule requiring all non-exempt staff at Medicare and Medicaid-certified providers to receive their first COVID-19 vaccination by December 6, 2021. *See* Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555 (Nov. 5, 2021). If a provider's employees did not comply with the mandate, the provider faced monetary penalties, denial of payment for new admissions, or termination of their provider agreement. *Id.* at 61574.

William Jackson, Erlanger's then-CEO, sought to comply with the new requirement. Citing the CMS mandate, Jackson advised all staff to either be vaccinated or request an exemption by December 5, 2021, and to be fully vaccinated (unless exempted) by January 4, 2022. He explained that "failure to comply is not an option" because Erlanger "derive[s] a substantial amount . . . of funding" from CMS programs. DE 17-3, Ex. 3, Page ID 181. Finally, Jackson warned employees that failure to get vaccinated or receive an exemption would result in termination of their employment.

Clark did not receive a COVID-19 vaccine, and she did not apply for an exemption. Because she failed to comply with the vaccine requirement, Erlanger suspended Clark without pay. Clark then sued Jackson on behalf of herself and others similarly situated, alleging that the vaccine

[2] Erlanger Health System is the business name for Chattanooga-Hamilton Hospital. Erlanger is a public entity in Tennessee; neither party disputes that Erlanger is a state actor.

requirement violated her "constitutional rights to privacy and to refuse medical treatment" under the Fourteenth Amendment. DE 15, Am. Compl., Page ID 114.

Jackson moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Clark failed to allege any violation of her constitutional rights. In support of his motion, Jackson attached several exhibits, including Erlanger's bylaws, portions of its employment policy, and two email messages Jackson sent to Erlanger employees. Clark claimed that Jackson's references to these materials were improper, but the district court disagreed. The district court ultimately granted Jackson's motion to dismiss.

On appeal, Clark argues that the district court erred both procedurally and substantively. Procedurally, Clark first argues that the Federal Rules of Civil Procedure do not permit a court to consider materials outside the pleadings on a motion to dismiss. Clark further argues that a defendant may not assert an affirmative defense on a motion to dismiss if it has not been pled in the defendant's answer. Substantively, Clark challenges the district court's conclusion that she failed to plausibly allege a violation of her constitutional rights. Clark argues that the district court erred at each step of its Fourteenth Amendment analysis, contending that she properly pled violations of her substantive due process, procedural due process, and equal protection rights.

II.

This court reviews de novo a district court's dismissal of a complaint under Rule 12(b)(6). *In re NM Holdings Co.*, 622 F.3d 613, 618 (6th Cir. 2010) (citation omitted). On such a review, this court construes the "complaint in the light most favorable to the plaintiff and must accept all of the factual allegations contained in the complaint as true." *Id.* To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

III.

Jackson submitted a number of supporting materials to the court alongside his motion to dismiss. These included Erlanger's bylaws, portions of its employment policy, and two emails that he sent to all Erlanger's employees regarding the vaccine requirement. Jackson also referenced CMS guidelines and its interim final rule in his memorandum in support of his motion. Clark raises two challenges to the district court's consideration of these materials at the motion to dismiss stage. First, Clark argues that the Federal Rules of Civil Procedure do not permit consideration of any materials other than the complaint. Second, she argues that Jackson's attorneys improperly authenticated the materials they submitted.

Generally, a court may not consider evidence outside the pleadings on a motion to dismiss. Fed. R. Civ. P. 12(d). If such evidence is presented to and considered by the court, the court must treat the motion as a summary judgment motion and allow appropriate discovery. *Id.* A court may, however, consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice" on a motion to dismiss without converting it to one for summary judgment. *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). Although a plaintiff need not "attach to his complaint documents upon which his action is based," "a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (citations omitted).

The district court found that all of the documents Jackson submitted could be considered in evaluating the motion to dismiss. First, it determined that Erlanger's employment policy and bylaws were integral to the complaint because Clark's claims centered around employment actions taken by Erlanger. Second, it found that the CMS guidelines and the interim final rule were public records. Finally, it concluded that the emails Jackson sent to Erlanger employees were also integral

to the complaint because Clark referenced the emails in her amended complaint, including directly quoting from one email.

On appeal, Clark again argues that the Federal Rules of Civil Procedure do not permit consideration of material outside of the complaint on a motion to dismiss. In her development of that point, Clark acknowledges that our precedent permits consideration of such materials but instead argues for the first time that our court exceeded its authority in establishing that legal rule. According to Clark, our court is not empowered to amend the Federal Rules of Civil Procedure, and therefore the caselaw permitting consideration of materials other than the complaint on a motion to dismiss is illegitimate. Clark did not raise this argument in the district court, however, and she may not raise it for the first time on appeal. *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 443 (6th Cir. 2022). Accordingly, Clark forfeited this argument.

Further, Clark's broader argument, that a court may not consider materials outside of the complaint on a motion to dismiss, fails. In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, the Supreme Court held that courts may consider certain matters outside of the complaint on motions to dismiss. 551 U.S. 308, 322 (2007). Specifically, the Court stated that courts must consider, in addition to the complaint, "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* (citation omitted). Thus, Sixth Circuit caselaw permitting the consideration of certain materials outside the complaint on a motion to dismiss aligns with Supreme Court precedent.

Next, Clark argues that Jackson's attorneys "turned themselves into authenticating witnesses" when they submitted the exhibits in support of their motion to dismiss. CA6 R. 11, Appellant Br., at 10. When Jackson's attorneys first submitted the exhibits, they stated that "there

[wa]s no serious question as to the exhibits' authenticity." DE 17, Mem. in Supp. of Mot., Page ID 129 n.2. In her response, however, Clark challenged the authenticity of the documents. Jackson's attorneys then submitted a declaration in which Erlanger's chief legal officer expressly authenticated the documents.

Federal Rule of Evidence 901 requires a proponent of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." "This requirement does not erect a particularly high hurdle for a proponent to clear." *United States v. Hall*, 20 F.4th 1085, 1104 (6th Cir. 2022) (citation and internal quotation marks omitted). Whether a piece of evidence has been properly authenticated is a preliminary question for the court, and this court reviews decisions regarding authenticity for abuse of discretion. *United States v. Jones*, 107 F.3d 1147, 1149 (6th Cir. 1997).

In the district court, Clark did not develop her argument that the exhibits were not properly authenticated. Instead, Clark asserted only that Jackson's attorneys were trying to "bootleg unauthenticated documents before the court" and that they attempted to "inappropriately authenticate emails to the employees of Erlanger Health System" when they submitted them as exhibits. DE 21, Resp. to Mot. to Dismiss, Page ID 197–98. Clark did not provide any other support for these assertions, and the district court did not analyze the issue.

On appeal, Clark expands on her argument but cites no cases to support her contention that Jackson's attorneys improperly acted as authenticating witnesses by submitting the exhibits. She cites only Tennessee Rule of Professional Conduct 3.7 ("Lawyer as Witness"), which governs lawyers giving trial testimony and is irrelevant to her argument. Therefore, the district court did not abuse its discretion in finding that the supporting documents were properly authenticated.

IV.

Clark's next argument is that the trial court erred by allowing Jackson to raise an affirmative defense in a manner not permitted by the Federal Rules of Civil Procedure.[3] According to Clark, Jackson's argument that he implemented Erlanger's vaccine requirement to comply with the CMS mandate is an affirmative defense that could be raised only in his answer and not in his briefing on a motion to dismiss.

Jackson's reference to the CMS mandate, however, is not an affirmative defense. "An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case." *Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986). Conversely, defenses that "negate an element of the plaintiff's *prima facie* case" are not affirmative defenses. *Id.* To determine whether a defense is an affirmative defense, this court starts with the defenses listed in Federal Rule of Civil Procedure 8(c). *Id.* Defenses "analogous to or a derivative of one of the listed defenses should generally be deemed an affirmative defense." *Id.* Additionally, this court considers fairness, so a defense requiring the plaintiff to "perform additional discovery or develop new legal theories" will likely be considered an affirmative defense. *Id.*

Jackson's reference to the CMS mandate in this context exhibits no characteristics of an affirmative defense. First, it does not raise matters extraneous to Clark's prima facie case because whether Erlanger had a legitimate interest in imposing its vaccine requirement is an element of Clark's constitutional claims. Thus, Jackson's assertion of an interest in complying with federal law[4] in order to maintain Erlanger's funding is a direct refutation of Clark's claim. Second,

[3] The district court did not address Clark's affirmative defense argument.

[4] Although not in this context, compliance with federal law could operate as an affirmative defense in other circumstances. *See Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 912 (6th Cir.

Jackson's discussion of the CMS mandate did not require Clark to "perform additional discovery or develop new legal theories." *Ford Motor Co.*, 795 F.2d at 546. Third, by invoking the CMS mandate, Jackson does not admit that he violated Clark's rights but maintain that the CMS mandate provides an independent basis to dismiss her claims, a classic feature of an affirmative defense. *Id.* (explaining that affirmative defenses "derived from the common law plea of 'confession and avoidance'" (citation omitted)).[5]

Accordingly, Jackson's reference to the CMS mandate is not an improper affirmative defense.

V.

Moving to the substance of her complaint, Clark claims that Jackson violated her Fourteenth Amendment rights[6] by imposing the vaccine requirement and by suspending her when

---

2007) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof." (citation omitted)).

[5] Even if the CMS mandate were an affirmative defense, it would not be impermissible. A motion to dismiss may be granted on the basis of an affirmative defense where the plaintiff's allegations "show that a defense exists that legally defeats the claim for relief." *Marsh v. Genetech, Inc.*, 693 F.3d 546, 555 (6th Cir. 2012) (citation and internal quotation marks omitted). Here, Clark's complaint referenced the CMS mandate, claiming that Jackson "acted like he was under a legal compulsion [to comply with the CMS mandate] when he was not." DE 15, Am. Compl. Page ID 116. Therefore, Jackson's reference to the CMS mandate to explain the reason for the vaccine requirement would not be improper because Clark herself referenced it in her complaint. *Est. of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

[6] Clark also takes issue with the district court's dismissal of her state-law misrepresentation claim, arguing that she did not actually bring such a claim. Clark argues that because she listed the district court's jurisdiction as 28 U.S.C. § 1331 and 28 U.S.C. § 1343, it was apparent from the face of her amended complaint that she did not allege a state-law cause of action. Clark's amended complaint did not clearly state its causes of action, so it appears that the district court interpreted its allegations and construed them as various causes of action. Because Clark did not clearly assert a misrepresentation claim and insisted in her briefing that she brought no such claim, we vacate the district court's order to the extent it dismissed the misrepresentation claim.

she did not get vaccinated or seek an exemption. Clark alleges violations of her substantive due process, procedural due process, and equal protection rights.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process, one component of these guarantees, limits "governmental deprivations of life, liberty or property . . . regardless of the adequacy of the procedures employed.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citation omitted). Substantive due process protects interests "enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003)). In essence, substantive due process protects individual liberty from "arbitrary and capricious government action." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988).

To validly assert a substantive due process claim, a petitioner must provide a "careful description" of the claimed liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). This specificity requirement exists because substantive due process affords heightened protection for "fundamental" rights. *Id.* at 720. If the claim involves a fundamental right, strict scrutiny applies. *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). But if the claim does not involve a fundamental right, only rational basis review applies. *See Glucksberg*, 521 U.S. at 722; *see also Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1477 (6th Cir. 1993). Because "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended," courts should be "reluctant" to expand the rights recognized as fundamental. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Clark argues that she has a constitutional right to privacy and to refuse unwanted medical care and that Jackson violated those rights when he suspended her after she "refused and continues to refuse to be vaccinated." DE 15, Am. Compl., Page ID 114. The district court dismissed her claim, finding first that Clark's claimed right to privacy did not narrowly describe the asserted right as required for substantive due process purposes. Next, the district court rejected Clark's contention that a fundamental right to refuse medical care was implicated by Erlanger's vaccination requirement. Finally, the district court applied rational basis review and concluded that Erlanger's vaccine requirement was rationally related to its legitimate interests in "slowing the spread of disease" and "preserving the health of hospital employees and patients." DE 28, Mem. Op. & Order, Page ID 234-35.

On appeal, Clark continues to state only in general terms that she has a substantive due process right to refuse unwanted medical treatment.[7] Clark does not, however, engage with the district court's analysis, acknowledge any caselaw specific to vaccine mandates, or supply any reasoning relevant to the applicable legal framework.

To start, Clark has not meaningfully challenged the district court's conclusion that rational basis review applies to Clark's claim because Erlanger's vaccine requirement does not implicate a fundamental right. To this point, Clark offers no argument that refusing vaccination in particular is a fundamental right. Additionally, courts addressing vaccine mandates have repeatedly

---

[7] Clark also argues that CMS lacked authority "to order any State of Tennessee governmental agent or entity to take punitive action against an employee for refusing unwanted medical treatment." CA6 R. 11, Appellant Br., at 16. This argument is unavailing. CMS is not the defendant here. And, we note that, the Supreme Court held in *Biden v. Missouri* that "the Secretary did not exceed his statutory authority in requiring that, in order to remain eligible for Medicare and Medicaid dollars, the facilities covered by the interim rule must ensure that their employees be vaccinated against COVID-19." 142 S. Ct. 647, 653 (2022).

determined that the mandates do not implicate a fundamental right and have applied rational basis review.

In *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), the Supreme Court upheld a state law permitting localities to implement smallpox vaccine mandates. In doing so, the Court stated,

> We are unwilling to hold it to be an element in the liberty secured by the Constitution of the United States that one person, or a minority of persons, residing in any community and enjoying the benefits of its local government, should have the power thus to dominate the majority when supported in their action by the authority of the state.

*Id.* at 38. Although decided prior to the use of formal tiers of scrutiny, the Court in *Jacobson* applied what equates to rational basis review. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) ("Although *Jacobson* pre-dated the modern tiers of scrutiny, this Court essentially applied rational basis review to Henning Jacobson's challenge to a state law that, in light of an ongoing smallpox pandemic, required individuals to take a vaccine, pay a $5 fine, or establish that they qualified for an exemption.").

Following *Jacobson*, "federal courts have consistently held that vaccine mandates do not implicate a fundamental right" and have applied rational basis review. *Bauer v. Summey*, 568 F. Supp. 3d 573, 593 (D.S.C. 2021); *see also Lukaszczyk v. Cook County*, 47 F.4th 587, 603 (7th Cir. 2022) ("plaintiffs have not met their burden under the rational basis standard to show that the challenged [vaccination] policies violate their substantive due process rights."); *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) ("Such [a substantive due process] argument depends on the existence of a fundamental right ingrained in the American legal tradition. Yet *Jacobson*, which sustained a criminal conviction for refusing to be vaccinated, shows that plaintiffs lack such a right."); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021) ("Both this Court and the Supreme Court have consistently recognized that the Constitution embodies no

fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional."); *Phillips v. City of New York*, 775 F.3d 538, 542 n.5 (2d Cir. 2015) (rejecting strict scrutiny and noting that no court appears to have applied strict scrutiny under *Jacobson*); *Dixon v. De Blasio*, 566 F. Supp. 3d 171, 185 (E.D.N.Y. 2021) (the "right to refuse vaccination is not a fundamental right"), *vacated as moot*, No. 21-2666, 2022 WL 961191, at *1 (2d Cir. Mar. 28, 2022); *Harris v. Univ. of Mass.*, 557 F. Supp. 3d 304, 313 (D. Mass. 2021) (applying a "deferential standard"). We agree that *Jacobson* compels this result.

In her assertion of a general right to refuse medical treatment, Clark cites the Supreme Court decision in *Cruzan by Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261 (1990). Although the Court assumed in that case that competent individuals have a "constitutionally protected liberty interest in refusing unwanted medical treatment," *Cruzan* did not establish a fundamental right to refuse all medical treatment.[8] *Id.* at 279. Indeed, the Court highlighted *Jacobson* as a foundational case from which one might "infer[]" a "liberty interest in refusing unwanted medical treatment;" but *Jacobson*, as we have seen, applied only rational basis review to a vaccine mandate. *See id.* at 278. Because Clark fails to meaningfully argue that refusing vaccination is a fundamental right, and because *Jacobson* evaluated a vaccine mandate under rational basis review, we apply that standard to Clark's substantive due process claims.

For rational basis review, the petitioner bears the burden to show "that the government's action is not rationally related to any legitimate public interest." *Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015). This is a difficult burden to meet—a petitioner must overcome a

[8] *Cruzan* "assume[d] that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition" only "for the purposes of" deciding that case. 497 U.S. at 279.

presumption of constitutionality and must refute "every conceivable basis which might support" the government action. *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012) (citation and internal quotation marks omitted). That is, a governmental action will not be struck down so long as a "plausible" reason exists for its enactment. *Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022). Even "rational speculation unsupported by evidence or empirical data" justifies a government act under this type of review. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993).

Clark does not dispute that preserving public health by slowing the spread of disease is a legitimate public interest, nor does she dispute that preserving the health of Erlanger employees and patients is a legitimate public interest. Further, Clark does not offer any arguments that imposing a vaccine requirement does not serve those interests. Alternatively, Clark does not dispute that Erlanger had a legitimate interest in maintaining its federal funding or that imposing a vaccine requirement was necessary to maintain that funding. Clark offers no more than a naked assertion that she has a right to refuse unwanted medical treatment and that Erlanger's vaccination requirement violated that right. Because Clark has not met her burden under rational basis review, we affirm the district court's dismissal of Clark's substantive due process claim.

VI.

Clark also argues that Erlanger's vaccine requirement violated her procedural due process rights because she was not given "individual consideration." DE 15, Am. Compl., Page ID 116. To prove a procedural due process claim, a petitioner must establish that she had a "life, liberty, or property interest protected by the Due Process Clause," she was deprived of that interest, and she did not receive adequate procedural rights prior to the deprivation. *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (citation omitted). A procedural due process claim does not challenge

the substance of the state action, but instead asserts that the process provided prior to the deprivation was deficient. *Howard v. Grinage*, 82 F.3d 1343, 1349–50 (6th Cir. 1996).

The district court dismissed Clark's procedural due process claim, listing several defects in her complaint. First, the court stated that Clark failed to identify any protected interest. Second, it noted that Clark failed to allege a constitutionally deficient procedure because she did not explain why she was entitled to individual consideration or why she did not seek an exemption from the vaccine requirement.

On appeal, Clark contests both of the district court's conclusions. First, Clark argues that she "definitely had a liberty interest in working where she wanted to work as a registered nurse." CA6 R. 11, Appellant Br., at 18. Second, Clark persists in her argument that she should have received individual consideration before being suspended. Both arguments fail.

Clark has not identified a protected property interest. Courts look to state law to determine whether a petitioner has a property interest in his or her continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). In Tennessee, there is a "broad presumption that employees are at will." *Freeze v. City of Decherd*, 753 F.3d 661, 665 (6th Cir. 2014). An at-will employee "does not have a property interest in continued employment" unless "the employee had a reasonable expectation that termination would be only for good cause." *Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994). Clark did not allege that she had an employment contract or any reason to believe she could be terminated only for cause. Accordingly, Clark did not allege a protected interest in her continued employment at Erlanger.

Clark also has not established a constitutionally deficient procedure because she did not have a right to individual consideration. "Governmental determinations of a general nature that affect all equally do not give rise to a due process right to be heard." *Nasierowski Bros. Inv. Co.*

*v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991). Instead, "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Conn. Dep't. of Pub. Safety v. Doe,* 538 U.S. 1, 8 (2003). Erlanger's vaccination requirement was a prospective obligation that applied equally to all Erlanger employees, and Clark does not dispute the facts under which Erlanger imposed the suspension. Therefore, Erlanger's suspension of Clark based on her undisputed violation of its vaccination requirement did not give rise to an obligation to afford Clark an individual hearing. *Id.*

Clark cites *Loudermill* for the proposition that she was entitled to notice and a hearing before termination of her public sector job. *Loudermill*, however, is inapplicable. The plaintiff in *Loudermill* asserted a valid procedural due process claim because he could be terminated only for cause and because his termination decision was quasi-judicial. 470 U.S. at 535. In contrast, Clark is an at-will employee, and she does not dispute that she violated the generally applicable vaccine mandate that led to the adverse employment decision. *See Doe*, 538 U.S. at 8.

Therefore, we affirm the district court's dismissal of her procedural due process claim.

VII.

Clark's last claim is that Erlanger's policy, which treats her the same as someone who has never had COVID-19 even though she previously contracted it, violated her rights under the Fifth and Fourteenth Amendments. Jackson and the district court interpreted this as an equal protection claim.

The Equal Protection Clause prohibits a state from denying any person "the equal protection of the laws." U.S. Const. amend. XIV, § 1. The underlying principle of the Equal Protection Clause is that "all persons similarly situated should be treated alike." *City of Cleburne*

*v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). For an equal protection claim, government actions involving fundamental rights or suspect classifications are subject to strict scrutiny. *Moore v. Detroit Sch. Reform Bd.*, 293 F.3d 352, 368 (6th Cir. 2002) (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988)). Government actions involving neither fundamental rights nor suspect classifications generally receive rational basis review.[9] *Id.* (citations omitted). For a successful equal protection challenge under rational basis review, a petitioner must show "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In dismissing Clark's equal protection claim, the district court first discussed its unusual formulation. Clark did not allege that Erlanger treated her less favorably than other people similarly situated. Instead, Clark alleged that she was treated similarly to those different than her—Erlanger grouped her, who had contracted COVID-19 and arguably had some measure of natural immunity, together with those who had not contracted the virus and had no immunity. The district court concluded that this allegation did "not constitute a cognizable equal protection claim." DE 28, Op., Page ID 237. The district court went on, however, to find that Clark's equal protection claim would fail even if she had properly alleged disparate treatment. First, it concluded that rational basis review applied because Clark's alleged classification did not implicate a fundamental right nor a suspect class. Second, it reasoned that Erlanger's policy survived rational

[9] "Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy." *Clark v. Jeter*, 486 U.S. 456, 461 (1988); *see also United States v. Vaello Madero*, 142 S.Ct. 1539, 1559 (2022) (Sotomayor, J., dissenting) ("Where a law treats differently two different groups of people that are not members of a suspect or quasi-suspect classification, and the classification does not implicate a fundamental right, the law will survive an equal protection challenge if it is 'rationally related to a legitimate governmental interest.'" (citation omitted)).

basis review because the vaccination requirement, which allowed Erlanger to maintain its federal funding, is rationally related to its interest in continuing to function as a hospital.

On appeal, Clark argues that "governmental classification must be reasonable, not arbitrary" and that treating differently situated people in the same manner is arbitrary and unreasonable. CA6 R. 11, Appellant Br., at 20.

Even if we read Clark's claim to allege that she was part of a group of similarly situated people with some immunity against COVID-19 (through either infection or vaccination) but was treated differently than those who received vaccinations, it fails under rational basis review. Rational basis review applies because Clark's equal protection claim does not implicate a fundamental right nor involve a quasi-suspect or suspect classification. Jackson's asserted interest in imposing the vaccine requirement is maintaining Erlanger's federal funding and thus "continuing to function as a hospital." CA6 R. 14, Appellee Br., at 44. The vaccine requirement is rationally related to this interest because it was a condition of maintaining funding under the CMS mandate. Accordingly, Jackson's imposition of the vaccine mandate is rationally related to a legitimate interest and survives rational basis review.

VIII.

Finally, after Clark filed her appeal, Jackson filed a motion in this court seeking damages and costs under Federal Rule of Appellate Procedure 38. Rule 38 provides that this court may award "just" damages and costs if it "determines that an appeal is frivolous." Fed. R. App. P. 38. An appeal is frivolous if is obviously lacks merit and "is prosecuted for delay, harassment, or other improper purposes." *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir. 1997). We do recognize that Clark's opening brief raised various meritless claims, failed to engage with controlling authority, and introduced an entirely new argument that the Sixth Circuit exceeded its

authority in interpreting the Federal Rules of Civil Procedure. *See B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 269–72 (6th Cir. 2008). Further, Clark's counsel represented a plaintiff in an earlier case against Erlanger and made the same meritless authentication arguments, which suggests that counsel knew that those arguments were foreclosed. *See Brooks v. Spiegel*, No. 1:18-CV-12, 2018 WL 5833064, at *3–5 (E.D. Tenn. Nov. 7, 2018). We consider these features of Clark's appeal problematic. But because Clark did argue the merits of her claims by insisting the district court misinterpreted relevant caselaw, and because not all of the issues obviously lacked merit, we decline to award costs and damages under Rule 38. *Anderson v. Dickson*, 715 F. App'x 481, 489 (6th Cir. 2017).

IX.

For these reasons, we vacate the district court's order as to the state law misrepresentation claim, affirm on all other claims, and affirm the district court's judgment.